**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**MAGGIE FIFE**                                                                           **PLAINTIFF**

**V.**                                                              **CIVIL ACTION NO. 5:11cv157-KS-MTP**

**VICKSBURG HEALTHCARE, LLC D/B/A**
**RIVER REGION MEDICAL CENTER AND**
**DARLENE WHITE, INDIVIDUALLY AND**
**IN HER OFFICIAL CAPACITY**                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [46] of the

Defendants Vicksburg Healthcare, LLC d/b/a River Region Medical Center ("RRMC") and

Darlene White.  Having considered the parties' submissions, the record, and the

applicable law, the Court finds that the motion should be granted.

**I.  BACKGROUND**

On August 26, 2010, Plaintiff Maggie Fife, a Caucasian female, was terminated

from her employment with RRMC for purportedly violating the Health Insurance

Portability and Accountability Act of 1996 ("HIPAA") by accessing a co-worker's medical

records.  RRMC operates several medical facilities in Vicksburg, Mississippi, including a

hospital and a separate medical clinic that is commonly referred to as the "Street Clinic".

At the time of her discharge, Plaintiff was fifty-two (52) years old and was working in the

Street Clinic as a Medical Technologist.  Plaintiff had been employed by RRMC for

approximately twenty-five (25) years when she was terminated.

On October 27, 2011, Plaintiff brought this lawsuit against RRMC and her former

supervisor, Darlene White, asserting numerous federal and state law claims in

connection with the termination of her employment.  (*See* Compl. [1].)  Plaintiff alleges

employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act, 29 U.S.C. §

621 *et seq.* ("ADEA").  Plaintiff also asserts the following state law causes of action:

tortious breach of contract, wrongful discharge, intentional infliction of emotional distress,

and negligence.  RRMC and Defendant White have moved for summary judgment on all

of Plaintiff's claims.  (*See* Motion for SJ [46].)  The motion has been fully briefed and the

Court is ready to rule.

## II.  DISCUSSION

### A.     Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where

the burden of production at trial ultimately rests on the nonmovant, the movant must

merely demonstrate an absence of evidentiary support in the record for the nonmovant's

case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation

and internal quotation marks omitted).  The nonmovant must then "come forward with

specific facts showing that there is a genuine issue for trial."  *Id.*  "'An issue is material if

its resolution could affect the outcome of the action.'"  *Sierra Club, Inc. v. Sandy Creek

Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of

Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence

is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Cuadra*,

626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), *cert. denied*, 132 S. Ct. 2103 (2012).

## B.    Analysis

### 1.    Federal Claims

The following circumstances are pertinent to Plaintiff's federal claims for relief. In July of 2010, one of RRMC's employees at the Street Clinic was diagnosed with a serious illness and became a patient at RRMC (the "Employee-Patient").[1] On July 22, 2010, Defendant Darlene White was advised by Lisa Hasty, a RRMC employee, that

---

[1] The identity of the Employee-Patient will not be disclosed in this opinion and order due to privacy concerns and because the Employee-Patient's identity is irrelevant to the issues before the Court.

another RRMC employee, Liz Conner, had used her log-in and password information to view certain test results of the Employee-Patient on the hospital's Co-Path computer system.[2]  At that time, Defendant White was employed as the Administrative Laboratory Director and was responsible for managing both the hospital and Street Clinic laboratories.  Defendant White subsequently advised Joy Hite, RRMC's Privacy and Compliance Officer, of the matter and Ms. Hite conducted an investigation as to whether the Employee-Patient's medical information had been improperly accessed by other RRMC employees.

Ms. Hite initially attempted to obtain an audit of the Co-Path system with respect to the Employee-Patient's records, but was unable to obtain one.  Ms. Hite subsequently obtained audits of the HBO system, which Ms. Hite used to determine that the following RRMC employees had accessed the Employee-Patient's medical information without any legitimate reason for doing so:  Plaintiff Maggie Fife, Shirley Cosby, Shirley Brewer, Mary Elizabeth Conner,[3] Sylvia McBeath and Jennifer Smith.  Ms. Hite interviewed each of these employees.  Plaintiff and Shirley Cosby denied accessing the Employee-Patient's medical information.  Plaintiff told Ms. Hite that she already knew what was wrong with the Employee-Patient because they were friends and that during the relevant time frame, "people were using each other's computers because the [HBO] system was down."  (Fife

---

[2] RRMC laboratory employees utilize two different electronic record management programs, Co-Path and HBO.  Co-Path is used to record pathology results, while HBO is used to record all other laboratory results, such as blood and urinalysis.

[3] "Liz Conner" and "Mary Elizabeth Conner" refer to the same individual.  The HBO audit did not show that Ms. Conner had accessed the Employee-Patient's medical information apparently because she viewed the information through the Co-Path system.

Dep. [53-1] 104:1-5.)  Plaintiff and Shirley Cosby were terminated for violating HIPAA on August 26, 2010.  Brewer, Conner, McBeath and Smith all admitted to accessing the Employee-Patient's medical information without authorization.  Each of these employees received a written warning and Ms. Smith was also suspended for three (3) days without pay.

Also during the summer of 2010 (specifically, on August 20), Plaintiff met with Defendant White and was told that she was going to be laid off effective August 27, 2010.  Shirley Cosby was also present at this meeting.  Defendant White advised the Plaintiff and Ms. Cosby that laboratory testing would be performed at the hospital, as opposed to the Street Clinic, and thus, Plaintiff's services were no longer needed.  Ms. Cosby's Phlebotomist position was not being eliminated because blood samples would still be taken at the Street Clinic.  Defendant White further stated that another employee at the Street Clinic who was out on sick leave, the Employee-Patient, would be laid off and that the Employee-Patient would be advised of this decision through the mail.  Ms. Cosby purportedly questioned whether the Employee-Patient could be terminated while he or she was out sick, and walked out of the meeting after Ms. White stated, "we can do that."  (Cosby Dep. [53-3] 40:4-12.)

On August, 23, 2010, Plaintiff went to see Anita Oliphant, RRMC's Interim Human Resources Director, and told her that she had been laid off by Defendant White and requested a copy of the reduction-in-force policy.  Purportedly, Ms. Oliphant was rude to the Plaintiff and would not give her a copy of the policy.  On August 25, Ms. Oliphant contacted the Plaintiff and offered her a position in the hospital laboratory, involving the same duties the Plaintiff had been performing at the Street Clinic.  Plaintiff declined the

position because the shift hours would have interfered with her ability to care for her ninety-five (95) year-old mother. On the morning of August 26, Plaintiff called the corporate hotline and complained that Ms. Oliphant was rude and did not provide her with a copy of the reduction-in-force policy; that there was a breach of confidence in Defendant White telling her she would be laid off in front of a co-worker (Shirley Cosby); and, that she was not offered a chemistry supervisor position with hours comparable to those she was working at the Street Clinic. On the afternoon of August 26, Plaintiff was terminated for violating HIPAA.

Plaintiff alleges disparate treatment, disparate impact, and retaliation under both Title VII and the ADEA in connection with the preceding circumstances. As an initial matter, the Court finds that Plaintiff's Title VII and ADEA claims against Defendant Darlene White fail as a matter of law. Neither statute allows a plaintiff to maintain a claim against an individual supervisor. *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities.") (citation omitted); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (holding that there is no basis for individual liability against supervisory employees under the ADEA). Furthermore, Plaintiff's official capacity claims against Defendant White are redundant since her employer, RRMC, is a party to this lawsuit. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted).

Plaintiff's reliance on *Oden v. Okitbbeha County, Mississippi*, 246 F.3d 458 (5th Cir. 2001) and *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006), in support of Defendant

White being held liable is misplaced.  In *Oden*, the Fifth Circuit held that a sheriff could

be considered an employer under Title VII, and thus subject to official capacity liability,

since he "was solely responsible for hiring, promoting, and establishing the deputies'

wages."  246 F.3d at 465.  There is no claim or proof in this case that Defendant White

was solely responsible for hiring, promoting, and establishing Plaintiff's wages.  In

*Modica*, the Fifth Circuit found that the executive director of a state agency could be held

liable as an employer under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654

("FMLA"), given the straight-forward definition of "employer" under that statute.  465 F.3d

at 186-87.  The "employer" definitions under Title VII and the ADEA, the federal statutes

at issue here, are not similarly interpreted.  *See Ackel*, 339 F.3d at 381 n.1; *Stults*, 76

F.3d at 655.  Accordingly, summary judgment will be granted in favor of Defendant White

on Plaintiff's federal claims.

### a.      Title VII (Disparate Treatment)

Title VII provides that it is "an unlawful employment practice for an employer . . .

to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race . . . ."  42

U.S.C. § 2000e-2(a)(1).  A disparate treatment claim requires proof of intentional

discrimination.  *See Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  "Direct evidence of

an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily

prove their claims through circumstantial evidence."  *Scales v. Slater*, 181 F.3d 703, 709

(5th Cir. 1999) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996)).

Circumstantial evidence cases, such as this one, are analyzed through the burden

shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  *See Nasti v. CIBA Specialty*

*Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).  The Fifth Circuit employs the following

modified *McDonnell Douglas* approach in suits alleging racial discrimination:

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007)

(citation omitted).

The Court need not work through the preceding analysis with respect to Plaintiff's

claims of discrimination based on race.  Although the Complaint alleges violations of Title

VII, Plaintiff offered the following testimony at her deposition:

> Q: Do you think anything happened to you because of your race -- because you're white?
>
> A: No.
>
> Q: Do you think the layoff or reduction in force had any connection with your race?
>
> A: I don't know.
>
> Q: Do you have any reason to believe that?
>
> A: No.
>
> Q: Do you think the HIPAA investigation and resulting termination had anything to do with your race?
>
> A. No.

(Fife Dep. [46-1] 124:17-125:2.)  It is well-established that sworn testimony prevails over

pleadings and arguments of counsel for purposes of summary judgment. *See, e.g.*, *Nettles v. Travelers Prop. Cas. Ins. Co.*, 375 F. Supp. 2d 489, 492 (S.D. Miss. 2005); *Roberts v. Walthall County Gen. Hosp.*, 96 F. Supp. 2d 559, 561 (S.D. Miss. 2000), *aff'd*, 240 F.3d 1075 (5th Cir. 2000). Moreover, the employees that Plaintiff alleges RRMC treated more favorably than herself, Lisa Hasty and Jennifer Smith, are, like the Plaintiff, white. A prima facie case of racial discrimination requires a showing that the claimant was treated less favorably than other similarly situated employees who *are not* members of the claimant's protected class. *See Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (citation omitted). As a result, Plaintiff cannot make out a prima facie case and RRMC is entitled to summary judgment as a matter of law with respect to Plaintiff's Title VII disparate treatment claim.

### b.    ADEA (Disparate Treatment)

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). The *McDonnell Douglas* framework also applies to claims of disparate treatment under the ADEA. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). However, the Supreme Court has rejected the application of Title VII's "motivating factor" element to ADEA claims. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). To establish a disparate treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* That is, age must be "*the* 'reason' that the employer decided to act." *Id.* (emphasis added). Plaintiff's ADEA claim will necessarily fail if the summary judgment evidence

-9-

merely shows that age was a motivating factor in her termination from RRMC.  *See Moss*, 610 F.3d at 928.

*i)  Prima Facie Case*

The Plaintiff is required to show the following in order to make out a prima facie case of discrimination based on age:  (1) that she is within the protected class, i.e., at least 40 years old; (2) that she is qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone younger or treated less favorably than a similarly situated younger employee.  *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).  "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous."  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citation and internal quotation marks omitted).  Only the fourth element is at issue between the parties.  Plaintiff contends that this element is met because Lisa Hasty and Jennifer Smith, RRMC employees younger than the Plaintiff, were not terminated for violating HIPAA.[4]

RRMC argues that the Plaintiff and these comparators are not similarly situated.

---

[4] Plaintiff also claims "that she was subjected to disparate treatment in regard [to] the lay off on August 20, 2010 . . . ."  (Pl.'s Mem. of Auths. in Supp. of Resp. to Motion for SJ ("Mem. of Auths.") [54] at p. 44.)  This allegation fails to give rise to a genuine issue of material fact precluding summary judgment.  On August 26, 2010, Plaintiff was terminated for violating HIPAA.  This termination superseded and rendered moot RRMC's intended lay off of the Plaintiff in connection with a reduction in force at the Street Clinic.  Moreover, the Plaintiff was offered a similar position at the hospital after August 20, which she declined.  As a result, the Plaintiff being told on August 20 that she was to be laid off effective August 27 does not amount to an adverse employment decision.

RRMC asserts that Ms. Hasty was not included in the HIPAA investigation because her name did not appear on the HBO audit that Ms. Hite used during the investigation. As for Ms. Smith, RRMC posits that she admitted viewing the Employee-Patient's medical information without authorization, while the Plaintiff denied accessing the information and it did not believe Plaintiff's denial. RRMC also points out that two other employees disciplined but not terminated for violating HIPAA, Shirley Brewer and Mary Elizabeth Conner, are older than the Plaintiff and that a third employee, Sylvia McBeath, is only three (3) years younger than the Plaintiff. According to RRMC, these facts establish that the Plaintiff was not terminated because of her age.

A claimant who proffers a fellow employee as a comparator must demonstrate that the subject employment actions "were taken under nearly identical circumstances." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 895 (5th Cir. 2012) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* "[T]he similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations." *Lee*, 574 F.3d at 261.

The Court finds that the Plaintiff and Lisa Hasty are not similarly situated for purposes of the Plaintiff's prima facie case. RRMC had no documentary evidence showing that Ms. Hasty accessed the Employee-Patient's medical information.

Conversely, the HBO audit obtained by Ms. Hite led RRMC to determine that the Plaintiff accessed the Employee-Patient's protected information on multiple occasions. The summary judgment record also shows that the HIPAA investigation leading to Plaintiff's termination began when Ms. Hasty advised Defendant White that Liz Conner had used her log-in and password information to access the Employee-Patient's test results. The conduct of Ms. Hasty, who voluntarily went to a supervisor and disclosed a potential HIPAA violation, cannot be considered nearly identical to that of the alleged misconduct of the Plaintiff.

The conduct of Jennifer Smith and the Plaintiff, however, is more comparable. Both Plaintiff and Ms. Smith's Employee Disciplinary Action Notices list the same violations, *viz.*, failure to comply with hospital policy; unprofessional conduct; violation of confidentiality; and violation of HIPAA policy. (*See* Doc. No. [53-12] at pp. 1, 6.) Further, the same decision maker, Vance Reynolds (RRMC's CEO), ultimately determined that the Plaintiff's violations justified termination and that Ms. Smith should receive a written warning and a three-day suspension of employment for her violations.[5] Although there is a difference in the number of times Ms. Smith and the Plaintiff are charged with improperly accessing the Employee-Patient's medical information, four (4) as to the Plaintiff and thirteen (13) as to Ms. Smith, that difference only supports the inference that the termination of the Plaintiff versus the suspension of Ms. Smith was discriminatory.

RRMC's justification for treating Ms. Smith and the Plaintiff differently, that Ms. Smith admitted to accessing the protected information and the Plaintiff lied about her

---

[5] Joy Hite recommended both Plaintiff and Ms. Smith's employment outcomes to Mr. Reynolds.

misconduct, is not availing at this stage of the *McDonnell Douglas* analysis.  Ms. Smith is a proper comparator since she and the Plaintiff are charged with the same underlying misconduct, violating HIPAA, and the same decision maker determined their varying employment outcomes.  RRMC's justification for these different outcomes and the fact that other employees older than the Plaintiff were not terminated for violating HIPAA are more appropriately considered in the *legitimate reason* and *pretext* analyses.  *Cf. Lee*, 574 F.3d at 262 (finding that the plaintiff established his prima facie case and that certain distinctions between the plaintiff and a comparator's situations "might very well prove to be relevant in the event that KCS proffers a legitimate nondiscriminatory explanation for the disparate results").

RRMC's reliance on the Fifth Circuit's decision in *Wheeler v. BL Development Corp.*, 415 F.3d 399 (5th Cir. 2005) does not change this result.  In *Wheeler*, the Fifth Circuit affirmed the district court's ruling that Caucasian plaintiffs and an African-American comparator were not similarly situated.  *See id.* at 406.  The plaintiffs and the comparator were each accused of moving company assets during the same time frame.  *See id.*  However, the plaintiffs were found to be less than truthful during the course of the company's investigation, while the comparator readily admitted her conduct.  *See id.*  Also, the value of the company property removed by the plaintiffs, a tire changing machine, was much greater than the value of the hair care products taken by the comparator.  *See id.*  In the context of summary judgment, this Court is unable to make the credibility determination of whether or not the Plaintiff told the truth during the course of RRMC's investigation.  *See Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1327 n.4 (5th Cir. 1996) ("Credibility determinations, of course, are within the province of the fact-

finder.") (citation omitted).  Moreover, unlike the plaintiff/comparator situation at issue in *Wheeler*, the conduct of Ms. Smith could be considered more serious than that of the Plaintiff given the disparity in the number of times each individual was charged with accessing the Employee-Patient's medical information.  Viewing the evidence in the Plaintiff's favor, the Court concludes that the Plaintiff has met her "not [so] onerous" burden of establishing a prima facie case of employment discrimination based on age.  *Reed*, 701 F.3d at 439.

### ii)  Legitimate Nondiscriminatory Reason

The defendant's reason for the adverse employment action need not be persuasive or credible.  *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Sandstad*, 309 F.3d at 898.  Instead, the defendant's burden is to produce "evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'"  *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Hicks*, 509 U.S. at 509).  RRMC's Privacy and Compliance Officer, Joy Hite, testified at deposition that the Plaintiff and Shirley Cosby were terminated because they violated HIPAA and because they refused to admit to the violations notwithstanding documentation (the HBO audit) showing otherwise.  This evidence sufficiently negates the inference of discrimination raised by Plaintiff's prima facie case.  *See Horton v. Entergy Servs., Inc.*, No. 3:09cv66, 2012 WL 1098470, at *7 (S.D. Miss. Mar. 31, 2012) (finding the defendant-employer's burden of production met where the plaintiff-employee was accused of violating company policy and the defendant believed the plaintiff was dishonest during its internal investigation); *Teklehaimanot v. Park Ctr., Inc.*, 804 F. Supp. 2d 886, 909 (N.D. Ind.

2011) ("Park Center's explanation that it terminated Teklehaimanot because she breached its confidentiality and HIPAA policies is a credible, legitimate, non-discriminatory reason for her termination.").

*iii) Pretext*

The Plaintiff is now afforded a full and fair opportunity to show that the defendant's proffered explanation is not true, i.e., that it is a pretext for discrimination. *Price*, 283 F.3d at 720. Pretext may be exposed "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Moss*, 610 F.3d at 922. A claimant's prima facie case, combined with sufficient proof that the employer's proffered justification is false, may permit the trier of fact to determine that the employment decision was motivated by discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, there will also be cases where no reasonable jury could conclude that the employment action was discriminatory in nature, notwithstanding the plaintiff's showing of a prima facie case and sufficient evidence to negate the defendant's justification. *Id.* "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" *Id.* at 146-47.

Plaintiff essentially makes two pretext arguments: (1) that she was singled out and treated differently than other staff members accused of the same or nearly identical conduct; and (2) that the HIPAA investigation leading to her termination was a sham and a witch hunt designed to terminate two long-term employees of RRMC, the Plaintiff and Shirley Cosby. As noted above, RRMC asserts that it treated the Plaintiff and Shirley

Cosby differently than Jennifer Smith, Sylvia McBeath, Mary Elizabeth Conner and Shirley Brewer (the "Remaining Employees") because the former denied accessing the Employee-Patient's medical information and RRMC did not believe their denials, while the latter admitted to accessing the information without authorization.

As to Plaintiff's first pretext argument, she has failed to evidence that RRMC's asserted explanation is unworthy of credence. For instance, no showing is made that any of the Remaining Employees ultimately refused to admit viewing the Employee-Patient's medical information. Instead, Plaintiff focuses on the allegation that she and Ms. Cosby were given only one opportunity to admit or deny accessing the Employee-Patient's information, yet the Remaining Employees were each given two chances to come clean about the matter. First, this allegation is not supported by the summary judgment record. It appears that two of the Remaining Employees, Shirley Brewer and Sylvia McBeath, admitted their misconduct during their first and only interviews with Joy Hite. Second, it is irrelevant that the Plaintiff was not provided with a second interview with Ms. Hite since there is no indication that the Plaintiff would have admitted to accessing the records if she had been interviewed a second time.[6]

It is also pertinent at this stage of the *McDonnell Douglas* analysis, where "'the ultimate question [is] discrimination *vel non*'",[7] to consider the fact that two of the

_____

[6] Plaintiff and defense counsel danced around this issue for a few moments during her deposition. The Plaintiff initially provided that she did not know what she might have said during a hypothetical second interview. However, Plaintiff consistently testified that she did not access the records and eventually stated that she "would not have lied" during any second interview. (Fife Dep. [53-1] 112:20-21.)

[7] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Hicks*, 509 U.S. at 518).

Remaining Employees are older than the Plaintiff.[8] RRMC's retention of individuals within Plaintiff's protected class who were charged with essentially the same misconduct as the Plaintiff tends to negate any inference that Plaintiff's termination was based on age. Taking all the preceding circumstances into consideration, the Court finds Plaintiff's first pretext argument focusing on disparate treatment to be insufficient to preclude summary judgment.

Plaintiff asserts numerous complaints relating to the HIPAA investigation leading to her termination. First and foremost, Plaintiff denies accessing the Employee-Patient's protected health information. Plaintiff's denial of wrongdoing, in and of itself, fails to create a fact issue. "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (1993)). In *Jackson*, the Fifth Circuit found the claimant's assertion of innocence to be irrelevant in the absence of any evidence suggesting that his employer's reliance on the results of an investigation leading to his termination was in bad faith or unreasonable. *Id.*; *see also Reed*, 701 F.3d at 440 n.4 ("Reed's denial of wrongdoing, standing alone, is insufficient to create a fact issue.").

Plaintiff's briefing in opposition to summary judgment provides "that neither Cosby nor Fife could access ***diagnosis and test results*** of <u>any</u> patient of River Region or the

---

[8] Shirley Brewer was 63 and Mary Elizabeth Conner was 56 as of the date of Plaintiff's termination.

Street Clinic." (Pl.'s Mem. of Auths. [54] at p. 17.) However, Plaintiff testified at deposition that she had the ability to access a patient's "hematology, urinalysis, blood bank, [and] chemistry" laboratory results through RRMC's HBO system. (Fife Dep. [46-1] 24:16-19.) Plaintiff could also access "pregnancy tests, quick streps, flus, that kind of stuff." (Fife Dep. [46-1] 24:20-24.) The Employee-Patient's "medical information would have been available on River Region's HBO system . . . ." (Fife Dep. [46-1] 92:15-22.) The Plaintiff also testified as follows in regard to the HBO audit showing that her login-in and password had accessed the Employee-Patient's information:

> Q.    Have you seen the audit report since your termination?
>
> A.    No -- yes.
>
> Q.    Do you have any reason to think that document was falsified?
>
> A.    No.
>
>        . . . .
>
> Q.    And the audit report did show your user name and password as accessing . . . [the Employee-Patient's] records?
>
> A.    Yes.

(Fife Dep. [46-1] 115:10-20.) Plaintiff's sworn statements concerning the HBO audit and related medical information take precedence over the arguments of her counsel. *See Nettles*, 375 F. Supp. at 492; *Roberts*, 96 F. Supp. 2d at 561.

Plaintiff's opposition to summary judgment also makes much ado about a discrepancy between Joy Hite's deposition testimony and the testimony of Ms. Hite and Defendant White at a hearing before the Mississippi Department of Employment Security ("MDES"). Ms. Hite's deposition testimony indicates that the HIPAA investigation

resulted from Lisa Hasty reporting that Liz Conner used her log-in and password information to view the Employee-Patient's medical information. The MDES testimonies of Ms. Hite and Defendant White appear to indicate that the impetus for the HIPAA investigation was Defendant White telling Ms. Hite that there was a concern regarding the confidentiality of the Employee-Patient's medical information and that the Plaintiff had told Defendant White what was wrong with the Employee-Patient. The Court finds this discrepancy to be irrelevant to the issue of pretext. Regardless of how the investigation started, the summary judgment record shows that the HBO audit, as opposed to the Plaintiff telling Defendant White something about the Employee-Patient's medical condition, led RRMC to determine that a HIPAA violation had occurred. As noted above, Plaintiff has no reason to believe that the audit was falsified and admits that it shows her username and password as accessing the information.

Plaintiff raises a host of other allegations relating to the HIPAA investigation, including, but not limited to, the fact that some of the Remaining Employees worked at RRMC's hospital while the Plaintiff, Shirley Cosby and Jennifer Smith worked at the Street Clinic; RRMC has not produced all of its records pertaining to the HIPAA investigation; Denise Cooper did not immediately report a telephone call that she received from the Employee-Patient regarding the confidentiality of her information; Defendant White asked the Plaintiff questions about the Employee-Patient while she was on speakerphone without Plaintiff's knowledge; and, Jennifer Smith received a promotion after her suspension of employment. Upon review of Plaintiff's remaining complaints, as

well as RRMC's counter-arguments,[9] the Court finds that the Plaintiff has failed to evidence any genuine issue of *material* fact precluding summary judgment.

At best for the Plaintiff, she has raised a fact question as to whether RRMC's decision to terminate her was in error. More is required in order to proceed on a claim of employment discrimination. "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry*, 55 F.3d at 1091; *see also Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason."). A contrary ruling would amount to judicial nitpicking or second-guessing of an employer's business decision, which is proscribed by the Fifth Circuit. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers.") (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).

The Court also takes into consideration Plaintiff's proffered reasons for her termination other than her age, namely, RRMC's intention to cut costs by terminating a long-term employee[10] and Defendant White's animus toward the Plaintiff because of a

_____

[9] For example, RRMC posits that the court record contradicts Plaintiff's discovery-based complaint, and correctly notes that the Plaintiff should have filed a motion to compel if she believed that RRMC improperly withheld information. The time for any discovery motion in this case has long since passed. *See* L.U.Civ.R. 7(b)(2)(B).

[10] The Supreme Court has held that no ADEA violation results from an employer's termination of a long-term employee solely to prevent his pension benefits from vesting. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612-13, 113 S. Ct. 1701, 123 L. Ed. 2d

-20-

disparity in their educational credentials.  Even if the Plaintiff had presented evidence

that her age and these other factors motivated RRMC's adverse decision, her ADEA

claim could not proceed forward.  *See Moss*, 610 F.3d at 928.  In sum, the Court finds

that no reasonable jury could conclude that Plaintiff's "age was the '*but-for*' cause of"

RRMC's decision to terminate her employment.  *Id.* (emphasis added).  Thus, RRMC will

be granted summary judgment on Plaintiff's allegation of disparate treatment under the

ADEA.

### c.      Title VII and ADEA (Disparate Impact)

Plaintiff's disparate impact claim is based on RRMC's intention to lay her off

effective August 27, 2010, due to restructuring or a reduction-in-force ("RIF") at the

Street Clinic.  The following elements must be shown in order to establish a prima facie

case of discrimination under a disparate impact theory of recovery:  "(1) an identifiable,

facially neutral personnel policy or practice; (2) a disparate effect on members of a

protected class; and (3) a causal connection between the two."  *McClain v. Lufkin Indus.,

Inc.*, 519 F.3d 264, 276 (5th Cir. 2008) (citing *Watson v. Fort Worth Bank & Trust*, 487

U.S. 977, 994, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)).  A plaintiff may assert a

disparate impact claim under Title VII or the ADEA.  *See Smith v. City of Jackson, Miss.*,

544 U.S. 228, 240, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005).  However, "the scope of

disparate-impact liability under the ADEA is narrower than under Title VII."  *Id.*  The text

of the ADEA, unlike Title VII, affords an employer an affirmative defense if the challenged

policy is "'based on reasonable factors other than age'".  *Meacham v. Knolls Atomic*

_____

338 (1993).

*Power Lab.*, 554 U.S. 84, 87, 128 S. Ct. 2395, 171 L. Ed. 2d 283 (2008) (quoting 29

U.S.C. § 623(f)(1)).  No consideration of this affirmative defense is necessary since the

Plaintiff has failed to come forward with specific facts showing an issue for trial on each

of the elements of her prima facie case.

Assuming *arguendo* that RRMC's planned RIF at the Street Clinic constitutes a

facially neutral employment practice, there is no proof of "a disparate effect on *members*

of a protected class" or a causal connection between the RIF and any disparate effect.

*McClain*, 519 F.3d at 276 (emphasis added).  "Ordinarily, a *prima facie* disparate impact

case requires a showing of a substantial statistical disparity between protected and non-

protected workers in regards to employment or promotion."  *Stout v. Baxter Healthcare*

*Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (citation and internal quotation marks omitted).[11]

Plaintiff Fife's beliefs that the RIF constituted "a termination of Fife" and that "no criteria

was used to lay off anyone other than Plaintiff Fife" under the RIF,[12] fail to evidence a

legally cognizable statistical disparity.[13]  Furthermore, RRMC's RIF did not even have a

---

[11] The exception recognized by the Fifth Circuit in *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 813 (5th Cir. 1996)–no statistical evidence is necessary if the plaintiff can establish that "substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds"–is plainly inapplicable here.

[12] (Pl.'s Mem. of Auths. [54] at p. 46.)

[13] *Cf. Garcia*, 97 F.3d at 813 ("It would, of course, be insufficient for a claim under Title VII if Garcia were the only pregnant woman adversely affected . . . ."); *Pree v. Farmers Ins. Exch.*, No. 1:10CV723, 2013 WL 1249813, at *5 (E.D. Tex. Mar. 27, 2013) (finding plaintiff's allegation "that there was a disparate impact on her" inadequate to support a prima facie case of discrimination); *Murray v. John D. Archibold Mem'l Hosp.*, 50 F. Supp. 2d 1368, 1381-82 (M.D. Ga. 1999) (dismissing disparate impact claim for failure to exhaust administrative remedies when the plaintiff's initial EEOC charge alleged discrimination in connection with a hospital policy *only* as it applied *to her*).

disparate impact on the Plaintiff since she was terminated for violating HIPAA prior to the effective date of her lay off. *See supra* n.4. For these reasons, summary judgment will be granted in favor of RRMC on Plaintiff's disparate impact employment discrimination claim.

### d. Title VII and ADEA (Retaliation)

Plaintiff's retaliation claim centers on her call to RRMC's "corporate 'hot line'" after Defendant White told her that she would be laid off on August 27, 2010. (Pl.'s Mem. of Auths. [54] at p. 6.) Title VII and the ADEA prohibit employers from retaliating against employees for engaging in statutorily protected activities. *See* 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a). A claimant "establishes a prima facie case of retaliation by showing: (1) that she engaged in activity protected by Title VII or the ADEA; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992) (citations omitted).

Plaintiff's retaliation claims fail on the first required element of her prima facie case. An employee has engaged in protected activity if he has (1) *opposed* any practice made unlawful by Title VII or the ADEA (the "opposition clause"); or (2) made a charge, testified, assisted or *participated* in any way in an investigation, proceeding or hearing made available by either statute (the "participation clause"). *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000). The participation clause is irrelevant in this action because the Plaintiff did not file her EEOC charge until after she was terminated. *See id.* at 428. The opposition clause requires that Plaintiff show she had a reasonable "belief that the employer was engaged in unlawful employment practices."

*Id.* The Fifth Circuit has consistently held that the making of vague complaints to an employer without reference to an unlawful employment practice does not constitute protected activity.[14]

The following portions of Plaintiff's deposition testimony are relevant to the allegation that she opposed an employment practice made unlawful by Title VII or the ADEA during her "hot line" complaint:

> Q. So you didn't tell anybody at the hospital that you believed you were being laid off or discriminated against because of your race?
>
> A. No.
>
> Q. And you didn't tell anyone at the hospital that you believed you were being discriminated against because of your age?
>
> A. No.
>
> Q. Did you tell anyone at the hospital that you believed you were being discriminated against because of any other protected reason or protected characteristic?
>
> A. No.
>
> Q. Did you complain to anyone at the hospital about any type of discrimination?
>
> A. Not that I can recall at this time.
>
> . . . .

---

[14] *See, e.g., Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2011); *Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed. Appx. 390, 395 (5th Cir. 2008); *Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed. Appx. 913, 916 (5th Cir. 2006); *Moore v. United Parcel Serv., Inc.*, 150 Fed. Appx. 315, 319 (5th Cir. 2005); *accord Wright v. Custom Ecology, Inc.*, No. 3:11CV760, 2013 WL 1703738, at *7 (S.D. Miss. Apr. 19, 2013) ("Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute.") (citation omitted).

Q.      Before your termination, before you were informed that you were being terminated, did you complain to anyone outside the hospital that you were discriminated against because of your race?

A.      Not that I can recall at this time.

Q.      And before your termination, did you complain to anyone outside the hospital that you were being discriminated against because of your age?

A.      Before my termination?

Q.      Right, before August 26th when you were informed that your employment was terminated?

A.      Not that I can recall at this time.

Q.      Before August 26th, when you were informed that your employment was terminated, did you complain to anyone outside the hospital that you were being discriminated against for any reason?

A.      Not that I can recall at this time.

        . . . .

Q.      What -- tell me about your report to the hotline.

A.      I called to file a complaint on Anita Oliphant, about her being rude in HR and not providing me the copy of the RIF policy and procedure. I reported Darlene White, breach of confidence, telling me that I was being laid off on August 20th and offered a severance package and my last day to be August 27th in front of a coworker. And I complained about her not offering me a position that was comparable to what the hours -- what I -- the hours that I was working and I knew she had a position available with those same hours.

        . . . .

Q.      Did you complain during that hotline call that you were being discriminated against because of your race?

A.      Not that I can recall at this time.

Q.      Did you complain during that call that you were being discriminated against because of your age?

A.     Not that I can recall at this time.

Q.     Did you complain during that hotline call that you were being discriminated against for any reason?

A.     Not that I can recall at this time.

(Fife Dep. [53-1] 81:3-17, 82:1-17, 83:24-84:10, 84:18-85:2.)  This testimony negates any finding that the Plaintiff complained to RRMC about age or race-based discrimination during her hotline complaint or at any other time prior to her termination.  Thus, Plaintiff cannot meet the first required element of her prima facie case–participation in activity protected by Title VII or the ADEA–and summary judgment is appropriate.  *Cf. Wright*, 2013 WL 1703738, at *8 (granting summary judgment because the plaintiff failed to present evidence that his complaints referenced discrimination based on age or race); *Johnson v. Parkwood Behavioral Health Sys.*, No. 2:11CV212, 2013 WL 1827585, at *5 (N.D. Miss. Apr. 30, 2013) (same where the plaintiff's complaints did not concern any practice prohibited by Title VII).

          **2.     State Law Claims**[15]

                    **a.     Tortious Breach of Contract**

          It is undisputed that the Plaintiff was an at-will employee of RRMC with no

---

[15] Although Plaintiff's federal claims are no longer viable, the Court exercises its discretion to retain supplemental jurisdictional over Plaintiff's state law claims in order to rule on summary judgment.  *See* 28 U.S.C. § 1367.  Plaintiff has not raised any objection to the Court ruling on her state law claims in the event of the dismissal of her federal causes of action.  Further, the late stage of this proceeding warrants the retention of jurisdiction in this, the original forum chosen by the Plaintiff.  *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("Our case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation . . . , that court has abused its discretion under 28 U.S.C. § 1367.") (citations omitted).

express contract of employment. Mississippi adheres to the employment-at-will doctrine. *See Senseney v. Miss. Power Co.*, 914 So. 2d 1225, 1228 (¶ 8) (Miss. Ct. App. 2005) (citing *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874 (Miss. 1981)). Where there is no written employment agreement (or where an agreement does not specify the length of employment), the employment relationship is terminable at the will of either party. *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987). This "means that an employer may terminate an employee at any time for a good reason, a wrong reason, or no reason at all." *Senseney*, 914 So. 2d at 1228 (¶ 8).

There are two exceptions to the employment-at-will doctrine recognized under Mississippi law. *See McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993); *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1992). Plaintiff seeks to fit her tortious breach of contract claim under the exception recognized by the Mississippi Supreme Court in *Bobbitt*. Plaintiff's wrongful discharge cause of action, addressed in the next section of this opinion, is based on the case of *McArn*.

In *Bobbitt*, the court held that when an employer furnishes its employees a detailed manual setting forth its rules of employment and the procedures to be followed in the event that an employee violates its rules, the manual creates a contractual obligation on the part of the employer to follow its provisions in disciplining an employee for rules infractions specifically covered by the manual. 603 So. 2d at 361. Numerous authorities have recognized that *Bobbitt* has no application where an employee handbook contains a disclaimer to the effect that the policies and procedures in the handbook do not create a contract of employment. *See, e.g.*, *Kent v. Vicksburg Healthcare, LLC*, No. 5:10CV195, 2012 WL 1556511, at *6 (S.D. Miss. Apr. 30, 2012);

*Hall v. Bolivar County*, No. 2:08CV174, 2010 WL 3861078, at *2 (N.D. Miss. Sept. 24, 2010); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 848 (¶¶ 7-12) (Miss. 2001). RRMC's employee handbook issued to the Plaintiff states in pertinent part:

> Nothing in this handbook or in any of the facility's policies and procedures manuals shall be deemed to constitute a contract of employment for any duration or term, and all employees of this facility are employees-at-will who may quit at any time for any reason and who may be terminated at any time for any or no reason (that is, with or without cause).

(Fife Dep. [46-1] 50:10-12, 51:21-52:14, and Ex. 2 to Dep. at ECF p. 60.) Further, the Plaintiff signed a Handbook Receipt and Acknowledgment form indicating:

> I understand that my employment with the facility will be on an at-will basis, and that either I or the facility can terminate the relationship at any time, with or without notice and with or without cause.

> I understand that the handbook is not contractual in nature.

(Fife Dep. [46-1] 50:19-25, and Ex. 1 to Dep. at ECF p. 58.)

Plaintiff seeks to avoid the effect of the above-quoted disclaimers by arguing that RRMC's alleged failure to follow "policies and procedures for supervisors" pertaining to the Clinical Laboratories Improvement Act of 1967, as amended, 42 U.S.C. § 263a *et seq.* ("CLIA"), and "corporate policy" regarding HIPAA resulted in a breach of contract. (Pl.'s Mem. of Auths. [54] at pp. 27, 28.) This theory of liability is not well taken. The disclaimer in the employee handbook that Plaintiff admits receiving provides that nothing in the "handbook *or in any of the facility's policies and procedures manuals*" constitutes a contract of employment. (Ex. 2 to Fife Dep. [46-1] at ECF p. 60) (emphasis added). Thus, Plaintiff was on notice that any facility policy, as opposed to just the policies and procedures listed in the handbook, would not give rise to contractual obligations. *Cf.*

*Senseney*, 914 So. 2d at 1229 (¶ 12) (rejecting plaintiff's reliance on corporate guidelines that did not contain a disclaimer because the disclaimer in his employment application extended to all company policy statements). Even if the disclaimer in the RRMC handbook only referenced the policies and procedures contained therein, Plaintiff's separate acknowledgment that her "employment with the facility will be on an at-will basis"[16] renders ineffective her reliance on the *Bobbitt* exception. *Cf. McCrary v. El Paso Energy Holdings, Inc.*, 209 F. Supp. 2d 649, 652 (N.D. Miss. 2002) (dismissing breach of contract action where the plaintiff signed a statement acknowledging his at-will status, notwithstanding the absence of a disclaimer in a separate employee handbook).

Plaintiff's tortious breach of contract claim will be dismissed since RRMC could terminate her employment "for a good reason, a wrong reason, or no reason at all." *Senseney*, 914 So. 2d at 1228 (¶ 8).

### b.    Wrongful Discharge

In *McArn*, the Mississippi Supreme Court set forth the following "narrow public policy exception to the" doctrine of employment-at-will:

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

626 So. 2d at 607. Plaintiff seeks to fall under this exception by alleging that Defendant White violated the CLIA and engaged in illegal activity by serving as the Laboratory Director for the Street Clinic without the proper educational credentials, a Bachelor of

---

[16] (Ex. 1 to Fife Dep. [46-1] at ECF p. 58.)

Science degree.  The problem with Plaintiff's claim is that no evidence has been presented showing that she refused to participate in the acts she deems illegal or that she reported any alleged illegal activities prior to her termination.  Viewing the summary judgment evidence in the light most favorable to the Plaintiff, all that is established is that she went along with or participated in Defendant White's purported violations of the CLIA by signing off after Defendant White on certain laboratory documentation.  (*See* Fife Dep. [53-1] 35:24-47:5.)  Thus, summary judgment will be granted in favor of Defendants on Plaintiff's *McArn* wrongful discharge claim.  *Cf. Smiley v. Ga. Pac. Wood Prods., LLC*, No. 3:09CV711, 2011 WL 2009466, at *5 (S.D. Miss. May 23, 2011) ("*McArn* is inapplicable because Smiley has presented no competent evidence that he complained of, or refused to participate in, criminal conduct.") (citations omitted); *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 852 So. 2d 25, 26-27 (¶¶ 5-8) (Miss. 2003) (rejecting the plaintiff's *McArn* wrongful discharge claim in the absence of any allegation that she was terminated for reporting or refusing to participate in illegal activities).

### c.    Intentional Infliction of Emotional Distress

This claim is premised on the same allegations underlying Plaintiff's complaints of employment discrimination.  "The treatment received by Plaintiff Fife was so severe and pervasive causing Plaintiff Fife to be subjected to disparate discipline and disparate treatment in the workplace.  Other employees were clearly treated differently, and the treatment rendered to Plaintiff Fife by Defendant RRMC was intentional, willful, discriminatory and retaliatory."  (Pl.'s Mem. of Auths. [54] at p. 34.)  Defendants assert that Plaintiff's emotional distress claim is barred by the applicable statute of limitations and fails as a matter of law.  The Court agrees.

Actions asserting intentional infliction of emotional distress are subject to the one-year statute of limitations provided under section 15-1-35 of the Mississippi Code. *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (¶ 26) (Miss. 2010). The Court finds that the statute of limitations on the subject claim began to run on August 26, 2010, the date of Plaintiff's termination. This action, filed more than one year later on October 27, 2011, is time-barred.

Plaintiff's reliance on the doctrine of equitable tolling does not change this result. It is not clear if the Mississippi Supreme Court would even apply this doctrine in a case involving a non-governmental employer. "This Court and the Fifth Circuit have only employed the doctrine of equitable tolling in employment cases which involve governmental agencies." *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 n.5 (Miss. 1998).[17] Even accepting, *arguendo*, that the doctrine is applicable in a case such as this, Plaintiff has failed to show that the specific facts underlying her complaint justify equitable tolling.

"The theory of equitable tolling provides that where a plaintiff's delay in filing is caused by the defendant's misrepresentation, the statute is tolled." *Smith*, 726 So. 2d at 149 (¶ 19) (citing *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 810 (5th Cir. 1991)). "[E]xcusable neglect" for the late filing is insufficient. *Ott v. Johnson*, 192 F.3d

---

[17] "[A] federal court exercising supplemental jurisdiction over a state law claim must apply the substantive law of the state in which it sits." *Zavala v. City of Houston, Tex.*, 196 F.3d 1256, 1999 WL 800008, at *2 (5th Cir. Sept. 24, 1999) (citing *United Mine Workers v. Gibbs*, 389 U.S. 715, 726 (1966)). The Mississippi Supreme Court's rulings on substantive state law issues are binding in this Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

510, 513-14 (5th Cir. 1999) (citation omitted).  Equitable tolling is to be applied only in "rare and exceptional circumstances", such as when "the plaintiff is actively misled by the defendant about the cause of action . . . ."  *Id.* at  513.  Plaintiff Fife appears to contend that she was misled by RRMC in that she did not find out until discovery was conducted in this case that Defendant White and Joy Hite purportedly provided false testimony before the MESC.  Plaintiff had sufficient information to file her complaint in this action including a claim for intentional infliction of emotional distress prior to conducting any discovery but after the MESC hearings.  Thus, Plaintiff's late filing cannot be blamed on any purported misrepresentations attributable to the Defendants during the MESC proceeding.

Notwithstanding the statute of limitations, Defendants' conduct evidenced by the summary judgment record fails to support the maintenance of Plaintiff's emotional distress claim.  An action for intentional infliction of emotional distress requires the defendant's "conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶ 23) (Miss. Ct. App. 2004) (citation omitted).  Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities.  *Id.*  Furthermore, employment disputes will not ordinarily support an emotional distress claim.  *Lee*, 797 So. 2d at 851 (¶ 24).  "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress."  *Brown v. Inter-City Fed. Bank for Savings*, 738 So. 2d 262, 265 (¶ 9) (Miss. Ct. App. 1999)

(citing *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)). This is not such an unusual case and no reasonable jury could find that Defendants' conduct relating to Plaintiff's termination of employment was so outrageous and extreme in character as to be intolerable in a civilized society. Therefore, Defendants are entitled to summary judgment as a matter of law on Plaintiff's complaint of intentional infliction of emotional distress.

### d.    Negligence

Plaintiff asserts claims of negligent hiring, negligent supervision, negligent retention and negligent infliction of emotional distress against RRMC and Defendant White. Defendants posit that all of these claims are based on events that occurred in connection with Plaintiff's employment, and thus, the claims are barred by the exclusivity provision of the Mississippi Workers' Compensation Act (the "Act"). *See* Miss. Code Ann. § 71-3-9. The Mississippi Supreme Court has long held that the Act's exclusivity provision covers claims made by an injured employee against his employer or any co-employee causing injury. *See, e.g.*, *Christian v. McDonald*, 907 So. 2d 286, 290 (¶ 20) (Miss. 2005); *Sawyer v. Head*, 510 So. 2d 472, 476-77 (Miss. 1987); *Brown v. Estess*, 374 So. 2d 241, 242 (Miss. 1979). Moreover, negligence allegations like those raised by the Plaintiff in this lawsuit have consistently been found to fall within the scope of the Act. *See, e.g.*, *Ford v. Madison HMA, Inc.*, 867 F. Supp. 2d 843, 849 (S.D. Miss. 2012) (finding claims of negligent infliction of emotional distress and negligent supervision, retention and hiring to be barred under the Act); *Bailey v. Cooper Lighting, Inc.*, No. 5:07cv196, 2008 WL 1868568, at *5 (S.D. Miss. Apr. 24, 2008) (same); *McNatt v. NPC*

*Int'l, Inc.*, No. 1:10CV330, 2012 WL 884887, at *3 (N.D. Miss. Mar. 14, 2012) (same as to negligent hiring, negligent supervision and negligent retention claims). Plaintiff fails to present any contrary precedent or persuasive argument as to why the Act's exclusivity provision does not govern here. Therefore, her negligence claims will be dismissed.

## III. CONCLUSION

Based on the foregoing, summary judgment in favor of the Defendants is appropriate in this case.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [46] is granted and Plaintiff's Complaint is dismissed with prejudice. Any other pending motion is denied as moot. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 13th day of May, 2013

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE